UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ABDUL RAHIM N. AL-RAMADI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:14-cv-327 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Abdul Rahim N. Al-Ramadi, on October 16, 2014. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Abdul Rahim N. Al-Ramadi, filed an application for Supplemental Security Income on May 13, 2011, alleging a disability onset date of February 6, 1992. (Tr. 17). The Disability Determination Bureau denied Al-Ramadi's application on July 6, 2011, and again upon reconsideration on September 12, 2011. (Tr. 17). Al-Ramadi subsequently filed a timely request for a hearing on November 11, 2011. (Tr. 17). A hearing was held on March 4, 2013, before Administrative Law Judge (ALJ) James B. Griffith, and the ALJ issued an unfavorable decision on June 20, 2013. (Tr. 17–28). Vocational Expert (VE) Georgette Gunther, Kimberly Sherbert, Al-Ramadi's mother, and Al-Ramadi testified at the hearing. (Tr. 17). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5).

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Al-Ramadi had not engaged in substantial gainful activity since May 13, 2011, the application date. (Tr. 19). At step two, the ALJ determined that Al-Ramadi had the following severe impairments: bipolar disorder, learning disorder, and obesity. (Tr. 20). At step three, the ALJ concluded that Al-Ramadi did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20). In determining whether Al-Ramadi had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 12.02 and Listing 12.04. (Tr. 20–21). Additionally, the ALJ indicated that he considered Al-Ramadi's obesity by itself and in combination with his other impairments. (Tr. 20). The ALJ concluded that Al-Ramadi's obesity also did not meet a listing. (Tr. 20).

In finding that Al-Ramadi did not meet the above listings, the ALJ considered the Paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 21). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 21). The ALJ concluded that Al-Ramadi had a mild restriction in daily living activities. (Tr. 21). The ALJ noted that Al-Ramadi could fish, watch television, go out with friends, play cards and video games, use a computer, cook, care for his personal hygiene, shop, and complete household chores. (Tr. 21).

The ALJ found that Al-Ramadi had moderate difficulties in social functioning. (Tr. 21). Al-Ramadi stated that he got into fights at school, that he got along with friends well but had lost some friends recently, and that his sarcasm offended people occasionally. (Tr. 21). The ALJ referenced school records that found Al-Ramadi polite and that he worked well with others. (Tr. 21). Additionally, the ALJ noted that Al-Ramadi had a girlfriend and that he did not exhibit any significant difficulty communicating at the hearing. (Tr. 21).

The ALJ found that Al-Ramadi had moderate difficulties in concentration, persistence, or pace. (Tr. 21). The ALJ stated that Al-Ramadi's thought processes were logical and on task and that his attention and concentration were fair at a consultative examination. (Tr. 21). Additionally, the ALJ noted that Al-Ramadi could repeat four digits forward and backward and could perform simple arithmetic correctly. (Tr. 21). Moreover, Al-Ramadi did not exhibit difficulty understanding questions or concentrating at the hearing. (Tr. 21–22). The ALJ also determined that Al-Ramadi had not experienced any extended episodes of decompensation. (Tr. 22). The ALJ concluded that Al-Ramadi did not satisfy the Paragraph B criteria because his mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation of extended duration. (Tr. 22). Additionally, he found that Al-Ramadi did not meet the requirements for Paragraph C. (Tr. 22).

The ALJ then assessed Al-Ramadi's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) due to his diagnosed obesity except the claimant was limited to jobs that involved understanding, remembering and following simple instructions and directions in a static work setting. The claimant could not perform work that required regular adherence to strict productions quotas such as assembly-line work that required completion of a precise number of objects or tasks each workday or shift. Additionally, the claimant would be limited to jobs that required only occasional, superficial, contact with the public, co-workers and supervisors.

3

(Tr. 22–23). The ALJ explained that in considering Al-Ramadi's symptoms he followed a two-step process. (Tr. 23). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical and laboratory diagnostic technique that reasonably could be expected to produce Al-Ramadi's pain or other symptoms. (Tr. 23). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Al-Ramadi's functioning. (Tr. 23).

Al-Ramadi had a history of mental health issues, including learning disorders, bipolar disorder, behavior issues, and mood swings. (Tr. 23). He also reported difficulty with organization and following instructions. (Tr. 23). Al-Ramadi attempted suicide three times previously and was described as sluggish mentally. (Tr. 23). However, the ALJ noted that Al-Ramadi did not seek any mental health treatment, denied any psychiatric history, and did not take any psychotropic medications. (Tr. 23). Furthermore, the ALJ concluded that the record did not demonstrate significant mental health issues. (Tr. 23). For example, Al-Ramadi had normal mood, affect, and behavior and was oriented to all spheres. (Tr. 23).

The ALJ noted that Al-Ramadi had an individual education plan in school that controlled his classroom issues and allowed him to perform well in math and English. (Tr. 24). However, Al-Ramadi did not earn enough credits to graduate and struggled to pass the ISTEP program. (Tr. 24). The ALJ found that Al-Ramadi's IQ scores demonstrated borderline intellectual functioning, which the ALJ concluded was a significant impairment. (Tr. 24). Additionally, the ALJ noted that Al-Ramadi had a GAF score of 55, which was a moderate to serious impairment. (Tr. 24).

4

The ALJ noted that Al-Ramadi was obese at 5'10" and 260 pounds. (Tr. 24). He stated that he considered how Al-Ramadi's obesity affected his conditions and his functional limitations. (Tr. 24–25). The ALJ found that Al-Ramadi's obesity exacerbated his symptoms and impacted his ability to work significantly. (Tr. 25). However, the ALJ also found that Al-Ramadi remained active considering his daily living activities. (Tr. 25). For example, the ALJ noted that Al-Ramadi went fishing, cooked, cared for his personal hygiene, cleaned, shopped, and did laundry. (Tr. 25). Therefore, he concluded that Al-Ramadi's obesity was a severe impairment but that it did not cause significant difficulty. (Tr. 25). Moreover, the ALJ stated that Al-Ramadi's daily living activities contradicted his allegations of significant impairments. (Tr. 25).

The ALJ then considered the opinion evidence. (Tr. 25). Kimberly Sherbert, Al-Ramadi's mother, reported that Al-Ramadi had trouble squatting, bending, walking, kneeling, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. (Tr. 25). Although Sherbert was not a medical source, the ALJ gave her opinion significant weight because it was consistent with the medical evidence and she had a relationship with Al-Ramadi that gave her insight into his limitations. (Tr. 26). The ALJ also gave Dr. Robert Walsh's opinion great weight. (Tr. 26). Dr. Walsh conducted a consultative examination and concluded that Al-Ramadi had an auditory memory impairment, could manage money, and should continue psychological and psychiatric treatment. (Tr. 26). The ALJ gave Dr. Walsh's opinion great weight because it was consistent with the record. (Tr. 26).

Dr. Wayne J. Von Bargen also conducted a consultative examination and concluded that Al-Ramadi had possible borderline intellectual functioning or mild mental retardation. (Tr. 26).

5

The ALJ gave Dr. Von Bargen's opinion great weight because it was consistent with the record and he had conducted many examinations previously. (Tr. 26). The ALJ also considered the opinions of the State psychologists, who concluded that Al-Ramadi had moderate limitations in understanding, remembering, and following instructions, interacting with people appropriately, and adjusting to changes in work settings. (Tr. 26). The ALJ gave the psychologists' opinions substantial weight because they were consistent with the record but non-controlling weight because they did not examine Al-Ramadi. (Tr. 26). Furthermore, the ALJ considered the opinions of the State physicians, who found that Al-Ramadi could perform light work with some restrictions. (Tr. 26–27). The ALJ gave the physicians' opinions great weight because they were consistent with the record but non-controlling weight because they did not examine Al-Ramadi. (Tr. 27).

At step four, the ALJ determined that Al-Ramadi did not have past relevant work. (Tr. 27). Considering Al-Ramadi's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including production worker (123,000 jobs nationally), maid/housecleaner (175,000 jobs nationally), and hand packer (45,000 jobs nationally). (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."); *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; *Pepper*, 712 F.3d at 361–62; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a

7

severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**.

Al-Ramadi has argued that he did not understand his right to have representation at the hearing before the ALJ. The Commissioner has claimed that Al-Ramadi waived his right to representation. Claimants have a statutory right to representation at disability hearings. ***Thompson v. Sullivan***, 933 F.2d 581, 584 (7th Cir. 1991) (citing **42 U.S.C. § 406; 20 C.F.R. § 404.1700**)). However, a claimant may waive that right "if given sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*." ***Thompson***, 933 F.2d at 584 (citation omitted). To obtain a valid waiver of counsel, the ALJ must explain how "an attorney can aid in the proceedings, the possibility of free counsel or a contingency

arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Thompson*, 933 F.2d at 584.

Here, the ALJ mailed a notice titled "Your Right To Representation" to Al-Ramadi twice. (Tr. 114–15, 139–40). The notice described how an attorney could assist Al-Ramadi, how Al-Ramadi could receive free counsel, and the limit on attorney's fees. (Tr. 114–15, 139–40). The ALJ also postponed the first administrative hearing to allow Al-Ramadi to obtain representation. (Tr. 131–32). Before the rescheduled administrative hearing, Al-Ramadi signed a "Waiver of Right to Representation," which acknowledged that Al-Ramadi had been advised and understood his right to representation. (Tr. 156–57). Additionally, Al-Ramadi signed a notice titled "Your Right to Representation" that explained how an attorney could assist Al-Ramadi, that a representative would represent him on a contingent basis, and that a representative could not charge a fee without the Social Security Administration's approval. (Tr. 157). Moreover, Al-Ramadi testified that he wanted to proceed without representation when the ALJ offered to postpone the hearing a second time. (Tr. 43).

Although Al-Ramadi has argued that he did not understand the ramifications of proceeding *pro se*, the ALJ secured a valid waiver of counsel. The "Your Right to Representation" notices explained how an attorney could assist Al-Ramadi, that Al-Ramadi could retain free counsel or a contingent arrangement, and the limitation on attorney's fees. Moreover, Al-Ramadi signed a waiver that included the same information and testified that he wanted to proceed without representation when the ALJ offered to postpone the hearing. The record has demonstrated that Al-Ramadi received the necessary information to understand his rights and proceed *pro se*. Therefore, the ALJ obtained a valid waiver of counsel.

Al-Ramadi also has claimed that the ALJ failed to develop the record fully. The ALJ has a duty to develop a full and fair record. *Thompson*, 933 F.2d at 585. Additionally, the ALJ has an obligation to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" when the claimant is unrepresented. *Thompson*, 933 F.2d at 585 (citation omitted). Moreover, the ALJ has the same duty to develop the record when the claimant waived his right to counsel validly. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). Generally, the court must find a significant, prejudicial omission before it will find that the ALJ failed to develop the record fully and fairly. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246.

Al-Ramadi has claimed that the ALJ did not obtain a full history from his primary care physician, Dr. Cheryl Hess. He conceded that the ALJ obtained records from Dr. Hess for May 7, 2011 and February 19, 2013, the dates he testified to receiving treatment. However, he has alleged that he received additional treatment but that he could not recall other dates. Al-Ramadi did not identify any specific facts that the ALJ failed to consider and did not provide any new medical evidence.

The Commissioner has demonstrated that the ALJ developed the record fully and fairly. The ALJ postponed the first hearing to allow Al-Ramadi to obtain representation and to gather additional evidence. (Tr. 58). Additionally, the ALJ questioned Al-Ramadi and his mother about his treatment and the missing treatment records. (Tr. 47–48, 54–58). The agency then requested and received the missing the treatment records. (Tr. 529–37, 587–92). Specifically, the agency received treatment records from Dr. Hess and Parkview Hospital.

Al-Ramadi has argued that the ALJ failed to obtain a full history from Dr. Hess. However, the ALJ requested and received all medical and treatment records from May 1, 2011, Al-Ramadi's application date, through March 2013. (Tr. 526–536). Although Al-Ramadi has claimed that he received additional treatment from Dr. Hess, he has not identified any specific facts or medical evidence that the ALJ failed to obtain. Because Al-Ramadi has not identified specific, relevant facts that the ALJ failed to consider, a remand is not warranted. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Al-Ramadi also has claimed that the ALJ failed to obtain records from Parkview Hospital. However, the ALJ requested and received treatment records from Parkview Hospital during the relevant period. (Tr. 593–600). Similarly, Al-Ramadi did not identify any specific facts or medical evidence that the ALJ failed to consider. Because Al-Ramadi has not identified specific, relevant facts that the ALJ failed to consider, a remand is not warranted. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Al-Ramadi has argued that he was disabled under the child disability regulations for functional equivalence. He listed alleged limitations corresponding with the six domains of functioning used to determine a child's abilities. *See* **20 C.F.R. § 416.926a**. For example, Al-Ramadi stated that he became distracted, had trouble completing school work, and had behavioral issues at school. However, Al-Ramadi was not a child during the relevant period. Al-Ramadi was born on February 6, 1992 and was nineteen years old when he filed his application. Therefore, the child disability regulations do not apply. *See* **20 C.F.R. § 416.924(f)** ("For the period during which you are under age 18, we will use the rules in this section. For the period starting with the day you attain age 18, we will use the disability rules we use for adults who file new claims, in § 416.920.").

11

Al-Ramadi has claimed that the ALJ evaluated his concentration, persistence, or pace limitations incorrectly. However, Al-Ramadi did not develop an argument in support of that claim. Rather, he indicated only that he was receiving ongoing treatment from a therapist. Because Al-Ramadi failed to indicate how the ALJ evaluated his limitations incorrectly, that argument was waived. *See* **Hernandez v. Cook Cnty. Sheriff's Office**, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that "skeletal" arguments may be properly treated as waived . . . .") (citations omitted). Even if Al-Ramadi had not waived that argument, the ALJ supported his concentration, persistence, or pace finding with substantial evidence. The ALJ relied on his observations at the hearing that Al-Ramadi did not exhibit any difficulty understanding or concentrating. Additionally, he relied on the objective medical evidence, including a mental status examination and a psychological evaluation. Therefore, Al-Ramadi did not demonstrate that the ALJ evaluated his concentration, persistence, or pace limitations incorrectly.

Al-Ramadi has argued that the ALJ erred by making an adverse credibility determination. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. **Bates v. Colvin**, 736 F.3d 1093, 1098 (7th Cir. 2013); **Schmidt v. Astrue**, 496 F.3d 833, 843 (7th Cir. 2007); **Prochaska v. Barnhart**, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. **Nelson v. Apfel**, 131 F.3d 1228, 1237 (7th Cir. 1997); **Allord v. Barnhart**, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290

F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c)**; *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1; *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014)

13

("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2; *see Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the

14

evidence). He must "build an accurate and logical bridge from the evidence to h[is] conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1098. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates*, 736 F.3d at 1099.

Al-Ramadi has claimed that the ALJ erred by rejecting his claims of disabling obesity and that the ALJ considered inaccurate statements. For example, the ALJ noted that Al-Ramadi stated that he went fishing, did laundry, shopped, and went out with friends. Al-Ramadi has claimed that those statements were false. Specifically, he indicated that his mother testified that those statements were false. Therefore, Al-Ramadi has argued that the ALJ erred by relying on those statements to discount his claim of disabling obesity.

The ALJ found that Al-Ramadi's obesity was a severe impairment. Additionally, he indicated that he considered Al-Ramadi's obesity and its effects on his other impairments. Although the ALJ found that Al-Ramadi's obesity was a severe impairment, he concluded that it did not affect his ability to work significantly. The ALJ noted that Al-Ramadi remained active despite his obesity. For example, he listed that Al-Ramadi could clean, fish, hang out with friends, cook, do laundry, take out the trash, shop, care for his personal hygiene, and play on the computer. The ALJ concluded that Al-Ramadi's daily activities contradicted his allegation that his obesity was disabling.

The ALJ's obesity credibility finding was not patently wrong. He reviewed the objective medical evidence, including how Al-Ramadi's obesity affected his impairments. Additionally, he explained how Al-Ramadi's daily living activities contradicted his allegations. The ALJ cited

Al-Ramadi's answers during examinations, his answers on a function report, and his mother's answers on a function report to determine his daily living activities. Although Al-Ramadi has argued that his answers regarding his daily living activities were false, the ALJ could rely on those statements to support his credibility finding. *See* SSR 96-7p. The ALJ built a logical and accurate bridge from the evidence to his conclusion by relying on the objective medical evidence and Al-Ramadi's daily living activities. Additionally, he made more than a single conclusory statement. Therefore, the credibility finding was not patently wrong.

Finally, Al-Ramadi has argued that the ALJ did not support his step five finding with substantial evidence. At step five, the ALJ concluded that Al-Ramadi could perform other work as a production worker, house cleaner, or hand packer. (Tr. 28). The ALJ relied on Al-Ramadi's age, education, work experience, and RFC to make that determination. (Tr. 27). Additionally, he relied on a vocational interrogatory from Dale Thomas, an impartial vocational expert who concluded that Al-Ramadi could perform the above jobs. (Tr. 28).

Al-Ramadi has not challenged the ALJ's RFC finding. However, he has claimed that the RFC limitations would prevent him from completing the above jobs. Specifically, he has argued that each job would require regular adherence to strict production quotas, an ability to remember complex instructions, and constant movement. The ALJ's RFC restricted Al-Ramadi from strict production quotas and required simple instructions in a static work setting. The ALJ did not include a movement restriction.

At step five, the ALJ needed to establish that Al-Ramadi could perform other work. **20 C.F.R. § 404.1520(g)(1)**. Furthermore, the ALJ needed to demonstrate that Al-Ramadi could perform at least one job that existed in the national economy. **20 C.F.R. § 404.1566(b)**. Generally, ALJs rely on the DOT and vocational experts to support their step five findings. *See*

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).  The ALJ must ask whether the VE's testimony conflicts with the DOT and must resolve any discrepancies before relying on the conflicting testimony.  SSR 00-4p; *Overman v. Astrue*, 546 F.3d 456, 462–64 (7th Cir. 2008).

The ALJ asked Thomas to assume that Al-Ramadi could not adhere to strict production quotas and was limited to simple instructions in a static work setting.  Thomas concluded that Al-Ramadi could perform the above jobs and stated that there were no conflicts between the DOT and his conclusion.  Although Al-Ramadi has argued that the VE's conclusion conflicted with his RFC, Thomas incorporated Al-Ramadi's limitations into his findings.  Furthermore, there were no apparent conflicts between the DOT and Thomas's findings.  Therefore, the ALJ could rely on Thomas's conclusion to support his step five finding.

Al-Ramadi also has argued that he could not perform the above jobs because they would require constant movement.  The ALJ did not find any movement restrictions.  Additionally, he was required only to include those limitations that he accepted as credible.  *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).  As discussed above, the ALJ's credibility finding was not patently wrong.  Therefore, the ALJ was not required to include a movement restriction.

The ALJ provided substantial evidence for his step five finding.  He considered Al-Ramadi's age, education, work experience, and RFC.  Additionally, he relied on Thomas's impartial vocational testimony, which concluded that Al-Ramadi could perform work in the national economy.  Furthermore, there was no apparent conflict between Thomas's testimony and the DOT.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 2nd day of December, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge